Filed 3/11/25  P. v. Padilla CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RONNIE PADILLA,<br><br>    Defendant and Appellant. | A170695<br><br>(Alameda County<br>Super. Ct. No. H44529A) |

Defendant Ronnie Padilla appeals from the trial court's order denying, at the prima facie stage, his petition for resentencing on his attempted murder conviction under Penal Code former section 1170.75 (now section 1172.6).[1]  Defendant argues that the jury instructions given at his trial allowed the jury to convict him under some theory of imputed malice other than the natural and probable consequences doctrine, and that therefore the record did not conclusively establish he was ineligible for relief as a matter of law.  We disagree and affirm the order.

---

[1]    Further undesignated statutory references are to the Penal Code. Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text.  (Stats. 2022, ch. 58, § 10.)  We refer to the renumbered section throughout this opinion.

1

## BACKGROUND

### The Attempted Murder Conviction and Initial Sentence[2]

In 2011, a jury convicted defendant of 13 crimes arising from different incidents that took place in 2005, 2006, and 2008. (*Padilla*, *supra*, A139259.) For the 2006 incident, defendant was convicted of attempted premeditated murder (§§ 187, 664; count one) and assault with a deadly weapon (§ 245, subd. (a)(1); count two). (*Padilla*, *supra*, A139259.) The jury also found true the allegations accompanying both charges that defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)) and committed the offenses to promote a criminal street gang (§ 186.22). (*Ibid.*)

According to the evidence at trial, on October 3, 2006, defendant and his accomplice Ismael Contreras, while incarcerated at the county jail, attacked another inmate in his cell with weapons fashioned out of jail-issued razors. (*Padilla*, *supra*, A139259.) Contreras sliced the victim's throat, and defendant sliced the victim's back, neck, stomach, and right temple. As the victim stumbled out of his cell, defendant and Contreras followed him and continued to attack him by kicking and swinging at him. Deputies assisted the victim to safety, and he underwent surgery for life-threatening lacerations to his neck and head. Defendant and Contreras were members of the Sureño gang. The victim was also a member of the gang, but had attempted to distance himself from it. Sureños oftentimes killed other

---

[2]     We draw our summary of the facts and procedural history of this case from our prior opinion in defendant's direct appeal. (*People v. Padilla* (Mar. 18, 2016, A139259) [nonpub. opn.], as mod. Apr. 14, 2016 (*Padilla*).) We refer to the facts only "for background purposes and to provide context for the parties' arguments." (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2, disapproved on other grounds in *People v. Patton* (2025) ___ Cal.5th ___ [2025 Cal. LEXIS 1165 at *25 & fn. 12].)

members who attempted to drop out of the gang. (*Padilla, supra,* A139259)

In 2013, the trial court sentenced defendant to an aggregate term of 71 years and four months to life, which included an indeterminate term of 18 years to life for the attempted murder conviction. (*Padilla*, *supra*, A139259.)

Defendant appealed, and in 2016, this court reversed his conviction for aggravated kidnapping (§ 209, subd. (a); count 11) arising from an incident unrelated to the attempted murder, but otherwise affirmed the judgment. (*Padilla*, *supra*, A139259.) Subsequently, defendant's conviction on count 11 was reduced to simple kidnapping (§ 207), and he was resentenced to an aggregate term of 64 years and eight months to life. His indeterminate term for the attempted murder conviction was unaffected and remained 18 years to life in prison.

**Petition for Resentencing**

In 2022, defendant filed, in propria persona, a petition for writ of habeas corpus requesting resentencing on his attempted murder conviction pursuant to section 1172.6. The trial court denied defendant habeas corpus relief, finding he had an alternative remedy under the resentencing procedure in section 1172.6. The court, however, elected to treat the petition as a petition for resentencing under section 1172.6. The court appointed counsel for defendant and ordered briefing. The People filed an opposition to the petition, and defendant, through counsel, filed a reply.

On May 21, 2024, the court denied defendant's petition, finding he failed to make a prima facie showing that he was entitled to relief. The court determined defendant was not entitled to section 1172.6 relief as a matter of law because the jury at his trial was not instructed on attempted murder based on felony murder or the natural and probable consequences doctrine. In addition, the court noted that the jury was instructed on aiding and

3

abetting, but found it could not have convicted defendant of attempted murder without a determination that he intended to kill the victim.

This appeal followed.

## DISCUSSION

### The Law and the Standard of Review

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.), which amended sections 188 and 189—the laws pertaining to felony murder and murder under the natural and probable consequences doctrine—"to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The legislation also added what is now section 1172.6, which provides a procedure to petition for retroactive relief for those who could not now be convicted because of changes to sections 188 and 189. (See *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

Then, effective January 1, 2022, the Legislature passed Senate Bill No. 775 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2), which amended section 1172.6 "to allow persons convicted of 'attempted murder under the natural and probable consequences doctrine' and manslaughter (in addition to those convicted of murder) to seek relief from their convictions." (*People v. Coley* (2022) 77 Cal.App.5th 539, 544 (*Coley*).)

As the law now stands, a petition under section 1172.6 may be filed by "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine*, or

4

manslaughter . . . ." (§ 1172.6, subd. (a), italics added.)

Upon submission of a section 1172.6 petition, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).) In conducting this inquiry, the trial court must accept as true the allegations of the petition, but, without engaging in factfinding, may look to the record of conviction in determining whether the allegations have been refuted as a matter of law. (See *Lewis*, *supra*, 11 Cal.5th at pp. 971–972.) The record of conviction includes jury instructions and verdict forms. (*People v. Harden* (2022) 81 Cal.App.5th 45, 50.) If the petition and record in the case establish conclusively the defendant is ineligible for relief as a matter of law, the trial court may deny the petition. (*People v. Strong* (2022) 13 Cal.5th 698, 708.) "For example, if the record shows that the jury was not instructed on either the natural and probable consequences or felony-murder doctrines, then the petitioner is ineligible for relief as a matter of law." (*People v. Harden*, *supra*, 81 Cal.App.5th at p. 52.)

If the defendant establishes a prima facie case for relief, the trial court must issue an order to show cause, conduct an evidentiary hearing to decide whether to vacate the conviction, and resentence the petitioner on any remaining counts if it finds the petitioner is entitled to relief. (§ 1172.6, subds. (c) & (d); *Lewis*, *supra*, 11 Cal.5th at p. 960.)

We review de novo the trial court's prima facie determination that a petitioner is ineligible for section 1172.6 relief as a matter of law. (*Coley*, *supra*, 77 Cal.App.5th at p. 545.)

**Defendant Is Ineligible for Relief as a Matter of Law**

Defendant concedes that his jury did not receive any instructions on felony murder or the natural and probable consequences theory. Nonetheless, he argues he is entitled to relief under section 1172.6 because

5

the jury instructions were "abstruse" and permitted the jury to convict him under a theory of imputed malice. Thus, defendant argues that the record does not conclusively establish he was ineligible for relief as a matter of law, and consequently the trial court erred in summarily denying his petition. We disagree.

As the People observe, defendant's argument ignores the plain language of section 1172.6. We noted above that section 1172.6, subdivision (a) identifies, and limits, the individuals who "may file a petition" seeking sentencing relief to those persons "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine,* or manslaughter." (Italics added.) This language is plain and unambiguous. For individuals convicted of attempted murder, the statute affords relief only to those convicted under the natural and probable consequences doctrine. (*Coley, supra,* 77 Cal.App.5th at p. 548 [section 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine"].)

Moreover, the language in section 1172.6 regarding convictions under any "other theory under which malice is imputed to a person" refers only to individuals convicted of murder. (§ 1172.6, subd. (a).)

Here, it is undisputed that defendant's jury was not instructed on the natural and probable consequences doctrine. Therefore, the jury could not have convicted defendant on that basis, making him ineligible for relief as a matter of law. For this reason alone, the trial court properly denied defendant's petition at the prima facie stage. (See *Coley, supra,* 77 Cal.App.5th at p. 548 [defendant convicted of attempted murder not entitled

6

to § 1172.6 relief because the jury was not instructed on the natural and probable consequences doctrine]; see also *People v. Offley* (2020) 48 Cal.App.5th 588, 599 (*Offley*) ["if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis, and the petition should be summarily denied"].)

But even assuming section 1172.6 relief were available to individuals convicted of attempted murder under a theory of imputed malice other than the natural and probable consequences doctrine, defendant would still be ineligible for relief because the instructions given at his trial did not allow the jury to convict him under such a theory.

The jury at defendant's trial was instructed that it could find defendant guilty of attempted murder on either the theory that he was a direct perpetrator or a direct aider and abettor. As to aiding and abetting, defendant argues the instructions were ambiguous because it did not tell the jury that it needed to find that the aider and abettor personally harbored an intent to kill. Defendant contends the instructions thus permitted the jury to impute malice to him solely based on his participation in the crime. We are unpersuaded. The jury instructions, read as a whole, demonstrate that regardless of whether defendant was convicted as the perpetrator or as an aider and abettor of attempted murder, in order to convict him, the jury had to find he harbored a specific intent to kill—the definition of express malice. (*People v. Smith* (2005) 37 Cal.4th 733, 739; § 188, subd. (a)(1).)

CALJIC No. 3.31 instructed the jury that the crime of attempted murder required a "union" between the act or conduct and "a specific intent in the mind of the perpetrator." It stated, "Unless this specific intent exists the crime or allegation to which it relates is not committed or is not true." It

7

referred to the attempted murder instruction, CALJIC No. 8.66, for the specific intent required.

CALJIC No. 8.66 instructed the jury that "[i]n order to prove attempted murder, each of the following elements must be proved; [¶] 1. A direct but ineffectual act was done by one person towards killing another human being; and [¶] 2. The person committing such act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."

As to the theory of aiding and abetting, CALJIC No. 3.01 instructed that "[a] person aids and abets the commission or attempted commission of a crime when he or she: [¶] (1) [w]ith knowledge of the unlawful purpose of the perpetrator, and [¶] (2) [w]ith the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] (3) [b]y act or advice, aids, promotes, encourages or instigates the commission of the crime."

Under these instructions, the jury would have found that, if defendant aided and abetted the commission of the crime, he did so with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating the commission of the crime. (CALJIC No. 3.01.) And the perpetrator's "unlawful purpose" with regard to attempted murder (CALJIC No. 3.01) was a "specific intent to kill" (CALJIC No. 8.66). Our Supreme Court has explained that an accomplice " ' "share[s] the specific intent of the perpetrator" . . . when the accomplice "knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." ' . . . ." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118.) Thus, " '[t]o be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill

8

and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must intend to kill.' " (See *People v. Nguyen* (2015) 61 Cal.4th 1015, 1054.)

Consistent with these principles, the instructions given in this case necessarily required the jury to find that in order to convict defendant of aiding and abetting attempted murder, it would have to find he harbored the same specific intent to kill as the perpetrator. (See *People v. Lee* (2023) 95 Cal.App.5th 1164, 1190–1191 [similar instructions given to the jury necessarily required the jury to find he "intended to aid and abet an unlawful killing, that is, that [he] had an intent to kill, the very definition of express malice"].) We see no ambiguity in the language of the relevant instructions as to this requirement—a reasonable jury would not have been misled into concluding that imputed malice was a sufficient basis upon which to find defendant guilty. (See *People v. Sanchez* (2001) 26 Cal.4th 834, 852 ["Jurors are presumed able to understand and correlate instructions and . . . to have followed the court's instructions"].)

Defendant's reliance on *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*) to argue otherwise is misplaced. In *Langi*, the defendant was convicted of second degree murder on an implied malice theory. (*Langi*, *supra*, 73 Cal.App.5th at p. 975.) The murder victim died after someone in a group, which included the defendant, punched him, causing him to fall and hit his head. (*Ibid*.) The defendant petitioned for resentencing under section 1172.6, arguing that while the jury was not instructed on the natural and probable consequences doctrine, the instructions were ambiguous and allowed the jury to find him guilty on a theory that imputed malice to him based solely on his participation in the crime. (*Langi*, at p. 977.) The trial

9

court summarily denied the petition.  (*Ibid.*)

Division Four of this court reversed and ordered an evidentiary hearing on the merits of the section 1172.6 petition.  (*Langi*, 73 Cal.App.5th at p. 984.)  It observed that the second degree murder instruction (CALJIC No. 8.31) required the jury to find the perpetrator deliberately performed a fatal act—in that case, a punch—"with knowledge of the danger to, and with conscious disregard for, human life," but it did not require finding that the perpetrator's purpose was to kill the victim.  (*Langi*, at pp. 981–982.)  For the jury to then convict the defendant as an aider and abettor of second degree murder under CALJIC No. 3.01, the jury could have found the defendant only intended to encourage the deliberate punch, regardless of whether or not he "intended to aid or encourage [the] killing," or "knew of and disregarded the risk of such a killing."  (*Langi*, at p. 983.)  Thus, the defendant's record of conviction did not conclusively negate the possibility that the jury found him guilty as an aider and abettor on an imputed malice theory.  (*Id.* at pp. 983–984.)

*Langi* is distinguishable.  The instructions in this case did not include the problematic second degree murder instruction.  Also, *Langi* involved implied malice, which does not require an intent to kill.  (*People v. Gonzalez* (2012) 54 Cal.4th 643, 653–654, superseded by statute on other grounds as explained in *People v. Wilson* (2023) 14 Cal.5th 839, 868.)  In contrast to second degree implied malice murder, attempted murder requires a specific intent to unlawfully kill another human being.  (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890 [" 'Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' "].)  And as explained above, the jury instructions required the jury to find that defendant, as an aider and abettor to attempted murder,

shared the perpetrator's intent to kill before convicting him of attempted murder. Thus, the possibility of imputing malice to an aider and abettor identified in *Langi* was not present here. (See *Coley*, *supra*, 77 Cal.App.5th at pp. 547–548 [holding *Langi* did not apply because jury convicted defendant of attempted murder based on jury instructions requiring an intent to kill].)

Likewise unavailing is defendant's assertion that "the 'group beating' portion of the instruction" pertaining to the enhancement for personally inflicting great bodily injury allowed the jury to find that enhancement true "based on imputation of the intent and actions of others." But defendant does not set forth what the "group beating" portion of the instruction is, much less explain how it supports his position. In any event, there is no basis to conclude that the instruction regarding the great bodily injury enhancement (CALJIC No. 17.20) permitted the jury to convict defendant of attempted murder based on a theory of imputed malice. The instruction required the jury to find defendant guilty of attempted murder before determining whether "defendant personally inflicted great bodily injury on [the victim]." This means the jury already determined defendant was guilty of attempted murder—and necessarily that he harbored the requisite intent to kill, as explained above—before considering whether defendant personally inflicted great bodily injury on the victim. Moreover, CALJIC No. 17.20 does not concern the requisite intent or mental state required for a conviction of attempted murder.

In sum, the instructions did not permit the jury to convict defendant of attempted murder under the natural and probable consequences doctrine or any other theory of imputed malice. Rather, the trial court instructed the jury on direct perpetrator liability or direct aider and abettor liability, each of which required a finding that defendant harbored a specific intent to kill. As

11

a result, the record of conviction conclusively establishes defendant is ineligible for resentencing as a matter of law.  (See *People v. Cortes* (2022) 75 Cal.App.5th 198, 204–205 [defendant was ineligible for § 1172.6 relief where the jury was not instructed on a theory of liability for attempted murder or murder that required that malice be imputed to him]; see also *Coley, supra,* 77 Cal.App.5th at p. 548 ["Direct aiding and abetting remains a valid theory of attempted murder after the enactment of Senate Bill No. 775"].)

## DISPOSITION

The order denying defendant's petition for resentencing is affirmed.

_____

RICHMAN, J.

We concur.

_____

STEWART,  P.J.

_____

DESAUTELS, J.

(A170695)

13